# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FOREFRONT DERMATOLOGY SC,**

       **Plaintiff,**

       **v.**                      **Case No. 26-CV-199**

**TYLER O. VUKMER,**

       **Defendant.**

# DECISION AND ORDER

## 1. Background

Tyler O. Vukmer began working for Forefront Dermatology, SC, at its clinic in Lakewood, Colorado. (ECF No. 1-2, ¶ 1.) Although he was subject to a two-year contract and required to provide at least 120 days' notice, Vukmer quit without notice after a little more than a year. (ECF No. 1-2, ¶ 1.) The parties' agreement contains a liquidated damages provision requiring Vukmer to pay $750 for every day less than 120 days of notice he failed to provide. (ECF No. 1-2, ¶ 13.) Forefront also paid Vukmer an $85,000 sign-on and retention bonus. (ECF No. 1-2, ¶ 13.) If Vukmer left early, he was required to repay any unearned portion of the bonus. (ECF No. 1-2, ¶ 13.) Thus, Forefront seeks $55,191.78 as to the unearned bonus (ECF No. 1-2, ¶ 19) and $90,000 in liquidated damages for Vukmer's failure to provide the required

notice. (ECF No. 1-2, ¶ 25.) The parties agreed that Colorado law would govern their contract. (ECF No. 1-2 at 28, ¶ 9.6.)

Forefront filed suit against Vukmer in Manitowoc County Circuit Court. (ECF No. 1.) Vukmer removed the action to this court and along with his answer filed counterclaims against Forefront. (ECF Nos. 1, 4.) Forefront moved to dismiss Vukmer's counterclaims (ECF No. 10), and the court paused the case to permit Vukmer time to find new counsel.

Once Vukmer retained successor counsel, rather than responding to Forefront's motion to dismiss he sought leave to file an amended answer and counterclaims. (ECF No. 20.) Forefront opposes Vukmer's motion in part because the proposed amended counterclaims allegedly fail for the same reasons as Vukmer's original counterclaims and thus amendment would be futile.

In his proposed amended answer, Vukmer asserts counterclaims for wrongful termination (ECF No. 20-1, ¶¶ 61-74); breach of contract (ECF No. 20-1, ¶¶ 75-88); constructive discharge (ECF No. 20-1, ¶¶ 89-102); violation of Colorado Revised Statute § 8-2-113 (ECF No. 20-1, ¶¶ 103-22); and violation of Colorado Revised Statute § 24-34-407 (ECF No. 20-1, ¶¶ 123-43). Vukmer also seeks declaratory judgment. (ECF No. 20-1, ¶ ¶ 144-51.)

## 2. Applicable Law

"The court should freely give leave [to file an amended pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). When a party seeks leave to amend after the deadline set by the court, *see* Fed. R. Civ. P. 16(b)(3)(A), the movant must also

demonstrate good cause, *see* Fed. R. Civ. P. 16(b)(4). If the proposed amendment would be futile because the proposed amendment could not survive a motion to dismiss, the court may deny leave to amend. *See Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001).

When a non-movant chooses to oppose amendment on the basis of futility (rather than later moving to dismiss the amended pleading), it essentially turns the opposition to the motion to amend into a motion to dismiss. The caveat is that by choosing this route, the opponent gives up its opportunity for the final word in the form of a reply.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts the well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025).

### 3. Leave to Amend

Forefront argues that Vukmer unreasonably delayed seeking leave to amend his answer and thus has failed to show good cause. (ECF No. 23 at 4.)

Vukmer answered the complaint on February 12, 2026. (ECF No. 4.) His answer included three counterclaims. (ECF No. 4.) Vukmer's attorney then moved to withdraw. (ECF No. 7.) Forefront moved to dismiss his counterclaims on March 5,

3

2026. (ECF No. 10.) The court held a scheduling conference on March 24, 2026. (ECF No. 17.) The court granted defense counsel's motion to withdraw, impressed on Vukmer the importance to of promptly obtaining new counsel (and that if he failed to do so, he would be representing himself), and set April 30, 2026 as the deadline for Vukmer to respond to the pending motion to dismiss with the idea being that it would allow him sufficient time to retain new counsel. (ECF Nos. 17, 18.) The court also set April 10, 2026, as the deadline for any amendment to the pleadings. (ECF No. 18, ¶ 2.)

Successor counsel appeared for Vukmer on April 30, 2026, and rather than responding to the motion to dismiss, Vukmer sought leave to file an amended answer. (ECF Nos. 19, 20.)

In an effort to establish good cause, Vukmer notes that he sought leave to amend on the same day counsel appeared. However, he does not indicate when he retained counsel, and he overlooks the fact that the court set the April 10, 2026, deadline for filing amended pleading in recognition of the fact that Vukmer would be retaining new counsel. The court emphasized to Vukmer that he would need to retain counsel quickly so that counsel had sufficient time to meet the court's deadlines.

Obtaining new counsel does not automatically establish good cause. *See, e.g.*, *Craig v. Cornerstone Trading Grp., LLC*, No. 1:23-cv-01575-TWP-MJD, 2025 U.S. Dist. LEXIS 200210, at *10 (S.D. Ind. Oct. 9, 2025) ("This lawsuit did not start fresh when the Cornerstone Defendants obtained new counsel."); *but see Ferguson v. Cook Cty.*, 349 F.R.D. 210, 213 (N.D. Ill. 2025) (reopening discovery when plaintiff obtained

new counsel after his prior counsel effectively abandoned him). Under the circumstances, the appearance of successor counsel is good cause here. Given that this case is in its earliest stages, the delay was less than three weeks, and amendment would not prejudice Forefront, it takes comparatively little "cause" for it to be sufficiently "good." *Cf. Haddad v. Midwest Pipecoating, Inc.*, No. 2:20-CV-396-PPS-JEM, 2022 U.S. Dist. LEXIS 256906, at *4 (N.D. Ind. May 2, 2022). The circumstances readily support the conclusion that leave to amend is in the interests of justice.

## 4. Futility

### 4.1. Wrongful Termination

Vukmer alleges that Forefront constructively terminated him after he made "good-faith reports to Forefront and to regulatory authorities concerning patient-safety, quality-of-care, medical-record, and prescription-practice concerns." (ECF No. 20-1, ¶ 66.) This, he argues, was contrary to Colorado public policy as expressed in Colorado's Healthcare Worker Protection Act (HCWPA), C.R.S. § 8-2-123, which prohibits a health-care provider from taking "disciplinary action against a health-care worker in retaliation for making a good faith report or disclosure," C.R.S. § 8-2-123(2)(a), "regarding patient safety information or quality of patient care," C.R.S. § 8-2-123(1)(b). The statute, however, does not create a private right of action. *Bakes v. Denver Health and Hosp. Authority*, No. 22CV31323, 2024 WL 6068092, at *2 (Colo.Dist.Ct. Feb. 09, 2024); *Falcone v. University of Colorado Health*, No. 2016CV32170, 2017 WL 9249168, at *2 (Colo.Dist.Ct. Feb. 20, 2017).

Vukmer does not purport to bring a claim that Forefront violated the HCWPA. At least not directly. Rather, he presents a common law wrongful (constructive) termination claim whereby he relies on the HCWPA as the public policy that his constructive discharge allegedly violated.

Colorado recognizes the tort of wrongful termination in violation of public policy. *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 232 P.3d 277, 281 (Colo. App. 2010) (citing *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992)).

> The factors a plaintiff must prove are (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute related to public health, safety, or welfare, or would undermine a clearly expressed policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware that the employee's refusal to perform the act was based on the employee's reasonable belief that the directed act was unlawful.

*Id.*

In holding that the HCWPA did not create a private right of action, the court in *Falcone v. University of Colorado Health*, No. 2016CV32170, 2017 WL 9249168 (Colo.Dist.Ct. Feb. 20, 2017), explicitly endorsed the distinction at the heart of Vukmer's claim. *Id.* at *2. Indeed, one reason the court found that the HCWPA did not create a private right of action was because an employee terminated in violation of the statute could seek relief through a common law claim of wrongful termination in violation of public policy. *Id.* ("But, since such a private right of action already exists, in the form of a common law claim for discharge in violation of public policy,

6

it was unnecessary for the legislature to create a statutory remedy, and I can discern no intention in the statutory language to do so.").

Thus, a plaintiff cannot assert a claim under the HCWPA directly, but a terminated employee can rely on the HCWPA as the public policy to support a wrongful termination in violation of public policy claim. *Falcone*, 2017 WL 9249168, at *2. That is what Vukmer seeks to do, with the caveat that he does not allege that he was terminated but rather constructively discharged.

"Employees cannot simply 'quit and sue,' claiming they were constructively discharged. Instead, the conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of competent, diligent, and reasonable employees to remain on the job to earn livelihoods." *Potts v. Gaia Child., LLC*, 2024 COA 58, ¶ 28, 555 P.3d 82, 88–89, *reh'g denied* (June 20, 2024).

Vukmer alleges that he reported various concerns to officials within Forefront and Colorado state officials. (ECF No. 20-1, ¶ 27.) These

> reports concerned, among other things, chronic unsafe double-booking of skin-cancer examinations, the retention of staff Dr. Vukmer had identified as unsafe, the mishandling of approximately 14,000 pathology records, the mislabeling of over 8,000 malignant or pre-malignant patient pathology records, management's misrepresentation of the scope and resolution of that event, and the unauthorized prescribing of medication under Dr. Vukmer's name.

(ECF No. 20-1, ¶ 29.)

He alleges that Forefront's failure to correct these problems made it impossible for him "to continue practicing medicine for Forefront consistent with his legal,

ethical, professional, and patient-care obligations," (ECF No. 20-1, ¶ 44) thereby resulting in his constructive termination.

Accepting Vukmer's allegations as true and drawing all reasonable inferences in his favor, he has failed to plead a plausible wrongful termination claim. What is missing is a plausible allegation causally connecting his protected activity to his constructive termination.

The HCWPA proscribes retaliation. Thus, to present a plausible claim of wrongful termination in violation of the public policy set forth in the HCWPA, the plaintiff must allege that he was terminated because he engaged in conduct protected by the HCWPA. Vukmer, however, alleges that he was constructively terminated because "[t]he conditions Forefront created and tolerated made it impossible for Dr. Vukmer to continue practicing medicine for Forefront consistent with his legal, ethical, professional, and patient-care obligations." There is a relationship between his constructive discharge and his protective activity in that they both arise from the unsafe, unethical, and unlawful circumstances he allegedly encountered at Forefront, but the relationship is not causal. It is merely that the same circumstances led to two distinct actions. Vukmer does not allege that Forefront created unsafe, unethical, and unlawful circumstances because he made a report to state officials. Rather, he made a report to state officials because Forefront allegedly created unsafe, unethical, and unlawful circumstances. Or stated more simply, Vukmer alleges that he was subject to working conditions so adverse that they amounted to constructive discharge and that he complained about those working conditions. But he does not allege that he

was subject to the adverse working conditions *because* he complained. The circumstances existed before his protected activity and Forefront merely failed to correct them, leading him to decide to quit.

The only adverse action he alleges as having arisen from protected activity is that Forefront retaliated "by changing his patient-load mix and increasing the number of lower-reimbursement insurance patients assigned to him, thereby decreasing his collections and collection bonus opportunity." (ECF No. 20-1, ¶ 33.) However, he does not point to this alleged pecuniary harm resulting in working conditions that were so intolerable that they amounted to constructive discharge. Rather, he alleges only that it was because he was unable to continuing working for "Forefront consistent with his legal, ethical, professional, and patient-care obligations" that he felt compelled to quit.

Having failed to allege that his inability to continue work for "Forefront consistent with his legal, ethical, professional, and patient-care obligations" arose because he engaged in activity protected by the HCWPA, Vukmer has failed to allege a plausible claim of wrongful termination in violation of public policy.

### 4.2. Breach of Contract / Good Faith and Fair Dealing

In his proposed amended counterclaim, Vukmer alleges, "The Agreement required Forefront not to interfere with Dr. Vukmer's ability to perform his professional duties, comply with law and ethics, maintain patient safety, exercise independent professional judgment, and protect his medical license and professional reputation." (ECF No. 20-1, ¶ 79.) That assertion is not supported by any citation to

the agreement. Nor does he address this allegation in his reply. Rather, in his reply, Vukmer relies exclusively on the theory that Forefront breached the contract by failing to comply with the duty of good faith and fair dealing.

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996). However, the duty of good faith and fair dealing applies only with respect to discretion afforded to one party under a contract. *Id*. "Discretion occurs when the parties, at formation, defer a decision regarding performance terms of the contract." *Id*. A party cannot rely on the claim to contradict any provision of the contract. *Id*. "Nor does the duty inject substantive terms into the parties' contract." *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 70, 348 P.3d 957, 967 (quoting *Amoco*, 908 P.2d at 507 n.6); *Miller v. Bank of New York Mellon*, 2016 COA 95, ¶ 41, 379 P.3d 342, 348. Thus, a plaintiff alleging a breach of the implied duty of good faith and fair dealing must ground his claim in a provision of the contract that vested the defendant with discretion. The plaintiff must then allege how the defendant exercised that discretion in a manner inconsistent with the duty of good faith and fair dealing.

Forefront argues that Vukmer has not pointed to any discretionary provision that Forefront failed to perform fairly and in good faith. The only contractual provision Vukmer points to in his reply is the liquidated damages provision. He argues that the enforceability of the liquidated damages provision depends on his "ability to practice medicine safely, ethically, and in compliance with law." (ECF No.

24 at 8.) In his view, "Forefront could not first prevent, hinder, or make objectively intolerable his ability to perform that notice period (through retaliation, unsafe practice conditions, and constructive discharge) and then invoke the notice and liquidated-damages provisions as though his performance remained possible, ethical, lawful, and required." (ECF No. 24 at 9.)

Vukmer has failed to state a breach of contract claim based on Forefront's alleged breach of the duty of good faith and fair dealing. The only contractual provision Vukmer points to—the liquidated damages provision—is not discretionary.

Vukmer argues, in effect, that implicit in the parties' agreement was a requirement that Forefront afford him a professional environment consistent with his performance of the contract. Colorado, however, does not recognize this sort of breach of contract claim or this version of the duty of good faith and fair dealing. Under Colorado law, a plaintiff cannot rely on the duty of good faith and fair dealing to argue that the contract creates new implicit obligations. And Vukmer has abandoned his contention that Forefront's failure to provide Vukmer an environment "to practice medicine safely, ethically, and in compliance with law" violated the parties' contract, explicitly or implicitly. As addressed in his reply, his sole breach of contract claim rests on the theory that Forefront breached the duty of good faith and fair dealing. Consequently, Vukmer's allegations may, at best, tend to support various defenses to Forefront's breach of contract claim. They do not constitute a plausible breach of contract counterclaim.

### 4.3. Constructive Discharge / Breach of Contract

In the third counterclaim of his proposed amended answer, Vukmer alleges constructive discharge. (ECF No. 20-1, ¶¶ 90-102.) Forefront argues that this claim fails because Colorado law does not recognize an independent claim of constructive discharge. (ECF No. 23 at 10-11.)

Forefront is correct that constructive discharge is not an independent claim when a plaintiff alleges a claim such as sexual discrimination. (ECF No. 23 at 10-11 (citing *Baker v. Baxa Corp.*, No. CIV.A.09-CV-02034, 2011 WL 650002, at *2 (D. Colo. Feb. 11, 2011)).) In that context, constructive discharge is merely the theory by which the plaintiff proves the adverse employment consequence element of the discrimination claim.

That, however, does not address what role, if any, the theory of constructive discharge may have in the context of an employment contract. Can an employer who is unable to terminate an employee because of a contract nonetheless make that employee's working conditions so miserable that he has no option but to quit? *Cf. Seinfeld*, "The Voice" (1997) (after learning that George has been faking a disability, his employer cannot fire him because of a one-year contract and so resorts to extraordinary measures to get him to quit).

Discharge, whether direct or constructive through the imposition of intolerable working conditions, may violate an employment contract. *See Wilson v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 703 P.2d 1257, 1259 (Colo. 1985); *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 921 (Colo. App. 2002); *Christie v. San Miguel Cnty. Sch. Dist. R-2(J)*, 759 P.2d 779, 782–83 (Colo. App. 1988); *see also Thompson v. Adams*

*Cnty. Sch. Dist. 50*, No. 17-CV-3147-WJM-NYW, 2018 WL 5619336, at \*3 (D. Colo. Oct. 30, 2018). Constructive discharge in this context might not be best regarded as an independent claim. Rather, it is perhaps best seen as merely the theory of liability underlying a breach of contract claim. But at this stage, where the court must consider the substance of the plaintiff's allegations rather than the labels attached to them, that Vukmer presented constructive discharge as an independent claim is not a basis for dismissal.

Vukmer alleges that the conditions at Forefront were incompatible with his professional obligations as a physician and therefore made it impossible for him to continue to work. These allegations could plausibly support a breach of contract claim on a theory of constructive discharge. Therefore, granting leave to amend would not be futile.

### 4.4. Colorado Non-Compete Statute

Vukmer's employment contract has a non-compete provision. "Any covenant not to compete provision of an employment, partnership, or corporate agreement between physicians that restricts the right of a physician to practice medicine, as defined in section 12-240-107, upon termination of the agreement, is void." C.R.S. § 8-2-113(5)(a). "An employer shall not enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant that is void under this section." C.R.S. § 8-2-113(8)(a). Any employer who violates "this section is liable for actual damages and a penalty of five thousand dollars per worker or prospective worker harmed by the conduct." C.R.S. § 8-2-113(8)(b).

Colorado adopted the relevant provision regarding physician non-compete agreements only in August 2025. *See* 2025 Colo. SB-83, ch. 366, p. 1983, § 1. Forefront argues that Vukmer's proposed claim fails because the contract predated the statute (having been signed on April 19, 2024) (ECF No. 1-2 at 13-30), and the statute is not retroactive. But in any event, it states that it is not seeking to enforce the non-compete provision. (ECF No. 23 at 12.)

In reply, Vukmer asserts that his "proposed claim is not limited to the 2025 amendment." (ECF No. 24 at 11.) He focuses on the notice and liquidated damages provisions, which he argues have the effect of a restrictive covenant. He argues, "Whether those provisions are properly characterized as lawful damages provisions, unlawful restraints, unenforceable penalties, or provisions made unenforceable by Forefront's own conduct cannot be resolved on Forefront's say-so at the leave-to-amend stage." (ECF No. 24 at 12.)

Vukmer has failed to show that Colorado's amendment of its non-compete statute was retroactive. The fact that parties' agreement states that it is "intended to comply with C.R.S. § 8-2-113, as such may be amended from time to time" (ECF No. 1-2 at 26, ¶ 7.5.2) does not reflect an agreement to be automatically bound by every legislative amendment of the statute without regard to traditional principles of retroactivity. This is made clear from a reading of the rest of the provision of the contract. The parties agreed only that, if their contract was found to not comply with C.R.S. § 8-2-113, a court could modify the agreement to bring it into compliance. Thus, the court can modify the agreement to strike the non-compete provision only if the

non-compete provision violates C.R.S. § 8-2-113. But the non-compete provision violates C.R.S. § 8-2-113 only if the amendments to C.R.S. § 8-2-113 were retroactive. Vukmer has failed to demonstrate that the amendments were retroactive, and so there is no basis for the court to strike the non-compete provision.

As for Vukmer's claim that the notice and liquidated damages provisions violated C.R.S. § 8-2-113, the claim is not well-developed in his reply. He does not point to any specific subsection of the statute that the provisions violate. Nor does he cite to a single case endorsing his claim.

> A liquidated damages provision is valid and enforceable if three elements are met: (1) "the parties intended to liquidate damages"; (2) "the amount of liquidated damages, when viewed as of the time the contract was made, was a reasonable estimate of the presumed actual damages that the breach would cause"; and (3) "when viewed again as of the date of the contract, it was difficult to ascertain the amount of actual damages that would result from a breach."

*Ravenstar, Ltd. Liab. Co. v. One Ski Hill Place, Ltd. Liab. Co.*, 2017 CO 83, ¶ 10, 401 P.3d 552, 555 (quoting *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006)).

Consideration of these elements will generally require a court to go beyond the appropriate scope of a motion to dismiss. Forefront has not shown that the liquidated damages provision in the agreement satisfies these elements so as to be valid as a matter of law. Accordingly, it would not be futile to allow Vukmer to file an amended complaint to allege that the liquidated damages provision violated C.R.S. § 8-2-113.

### 4.5. Protecting Opportunities and Workers' Rights (POWR) Act

Colorado regulates nondisclosure agreements in employment contracts. C.R.S. § 24-34-407. Specifically, an employer generally cannot restrict an employee's ability to disclose "any alleged discriminatory or unfair employment practice." C.R.S. § 24-34-407(1).

Section 4.4 of the parties' contract states:

> Physician acknowledges that, in the course of employment with Forefront, Physician will regularly receive and assist in compiling valuable trade secrets and other non-public confidential and proprietary information about Forefront's patients, employees, contracts, finances, business practices and plans, and the practices of other health care professionals ("Confidential Information"). Physician recognizes that all such Confidential Information is the property of Forefront and Physician agrees not to use, disclose, or reproduce any of Forefront's Confidential Information for any purpose whatsoever, except as required by law. The foregoing provisions will not apply to Confidential Information that becomes generally known by the public without any fault or contribution of Physician. This Section 4.4 does not, and will not be interpreted to, restrict Physician's use of Confidential Information (a) for the purpose of fulfilling Physician's obligations under this Agreement or (b) in accordance with Section 4.4.1. Physician will not have any rights to such Confidential Information or to copies of such Confidential Information except as may be required by law or by contract, and this Section 4.4 will not be interpreted to prevent disclosure of any Confidential Information as may be required by applicable law, lawful subpoena, or an order of a court of competent jurisdiction, provided that Physician shall promptly notify Forefront of Physician's receipt of any such subpoena or order and provide Forefront with ample opportunity to protect its interests prior to Physician complying with such order or subpoena. With respect to any Confidential Information that constitutes a trade secret under state or federal law, the restrictions shall apply for as long as such information remains a trade secret.

(ECF No. 23 at 13-14.)

The contract restricts Vukmer's use of confidential information, which it defines as "valuable trade secrets and other non-public confidential and proprietary information about Forefront's patients, employees, contracts, finances, business practices and plans, and the practices of other health care professionals." Discriminatory or unfair employment practices are not within any reasonable definition of trade secrets. *Cf.* Trade Secret, Black's Law Dictionary (12th ed. 2024). Thus, the parties' non-disclosure agreement plausibly violates the POWR Act only if discriminatory or unfair employment practices are within the scope of "non-public confidential and proprietary information."

Employers may restrict their employees' disclosure of confidential information; the POWR Act did not purport to bar these sorts of routine and valuable agreements. Such non-disclosure agreements will routinely use broad language so as to ensure they are fully protective of confidential information and to avoid ambiguity. However, broad language can also have unintended consequences. While it seems obvious that the intent of the non-disclosure agreement was to protect the sort of business information that is widely regarded as confidential, the court cannot hold as a matter of law that the non-disclosure agreement comports with the POWR Act. When a broad phrase such as "non-public confidential and proprietary information" is juxtaposed with a similarly broad phase as "any alleged discriminatory or unfair employment practice," C.R.S. § 24-34-407(1), it is plausible that there is some overlap. There are innumerable ways in which the "non-public confidential and proprietary" policies of a business like Forefront could constitute a discriminatory or unfair employment

practice. As such, the non-disclosure agreement plausibly violates that POWR Act and amendment to include such a claim would not be futile.

### 4.6. Declaratory Relief

Vukmer also seeks declaratory judgment. (ECF No. 20-1, ¶¶ 145-51.) But the declaratory relief that he seeks simply tracks the relief he seeks by way of his other claims and defenses. (ECF No. 20-1, ¶ 151.) Forefront argues that because his claim for declaratory judgment merely repeats his other claims, it fails for the same reasons his other claims fail. But as discussed above, not all of Vukmer's proposed amended counterclaims fail. Nonetheless, Forefront argues that the claim for declaratory relief should be dismissed as redundant.

Vukmer argues that his claims for declaratory relief "would clarify not only whether Forefront can recover damages, but also whether Forefront may enforce challenged contractual provisions going forward and whether Dr. Vukmer remains subject to restrictions affecting his professional practice and ability to discuss the facts underlying his claims and defenses." (ECF No. 24 at 15.)

"Where, as here, 'the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose because the controversy has ripened and the uncertainty and anticipation of litigation are alleviated." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013) (quoting *Amari v. Radio Spirits, Inc.*, 219 F.Supp.2d 942, 944 (N.D. Ill. 2002) (internal quotation marks omitted)). Faced with this redundancy, courts may decline to hear claims for declaratory judgment that serve no useful

purpose. *See N. Am. Elite Ins. Co. v. Menard Inc.*, 491 F. Supp. 3d 333, 343 (N.D. Ill. 2020); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 777 (N.D. Ill. 2019); *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015); *see also* 28 U.S.C. § 2201(a) (stating that declaratory judgment is discretionary).

Resolution of the underlying claims will determine the rights and obligations of the parties. Nothing more is to be gained through declaratory judgment. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534, 547 (N.D. Ill. 2016). Accordingly, it would be futile for Vukmer to amend his counterclaim to include a claim for declaratory relief.

## 5. Conclusion

For the reasons set forth above, the court will grant in part Vukmer's motion for leave to file an amended answer. Ordinarily, the court would simply instruct the Clerk to docket the proposed amended pleading and then dismiss the proposed amended claims that fail to state a plausible claim for relief. However, Vukmer's proposed amended answer failed to comply with Civil Local Rule 15(a) in that it attempted to incorporate by reference his prior answer. Therefore, within **seven days** of this order Vukmer must file an amended answer that fully complies with Civil Local Rule 15.

The court, however, denies Vukmer leave to amend with respect to the following proposed counterclaims: wrongful termination in violation of public policy; breach of the implied covenant of good faith and fair dealing; non-compete in violation of C.R.S. § 8-2-113; and declaratory judgment. Amendment to include such

counterclaims would be futile because, as alleged in the proposed amended answer, they each fail to state a claim upon which relief may be granted.

Vukmer may proceed with his counterclaims for constructive discharge / breach of contract; that the liquidated damages provision violated C.R.S. § 8-2-113; and that the non-disclosure provision violated C.R.S. § 24-34-407.

**IT IS THEREFORE ORDERED** that Vukmer's motion to file an amended answer is **granted in part** with respect to his counterclaims for breach of contact / constructive discharge; that the liquidated damages provision violated C.R.S. § 8-2-113; and that the non-disclosure provision violated C.R.S. § 24-34-407. Within **seven days** of this order Vukmer shall file an amended answer that fully complies with Civil Local Rule 15(a).

**IT IS FURTHER ORDERED** that Forefront's motion to dismiss Vukmer's counterclaims is **dismissed as moot**.

Dated at Green Bay, Wisconsin this 7th day of July, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge